## Case No. 2,234.
### BUTCHERS' ASS'N v. SLAUGHTER HOUSE CO.

[1 Woods, 50.][1]

Circuit Court, D. Louisiana. June Term, 1870.

WRIT OF ERROR—EFFECT OF ALLOWANCE — SECURITY—SUPERSEDEAS.

1. Where the supreme court of a state gave judgment for a perpetual injunction against defendants, and they sued out a writ of error to the supreme court of the United States, and within ten days gave bond in the sum of $10,000 to supersede the judgment of the state court, a justice of the United States supreme court refused, on motion, to require plaintiffs in error to give an additional bond with a larger penalty, although satisfied that the bond already given was not sufficient to cover the fees and emoluments claimed by defendants in error, which would come to the possession of the plaintiffs in error by reason of the supersedeas of the judgment of the state court.

2. As soon as a writ of error from the United States supreme court is applied for and allowed, the jurisdiction of that court attaches and supersedes any further action of a justice of that court at chambers.

3. It seems to be the settled understanding of the courts of the United States that both appeals and writs of error operate as a supersedeas without any express order to that effect, if taken within the proper time and with an offer of the requisite security.

[At chambers. The suits known as the "Slaughter House Cases" were brought in the Louisiana state courts, and involved the validity of a statute of that state granting a monopoly to a corporation entitled the "Crescent City Live Stock Landing & Slaughter House Company." The cases were decided in favor of the corporation in the supreme court of Louisiana, and writs of error were sued out by complainants.]

On the 3d of June, 1870, an application was made to Mr. Justice Bradley of the supreme court of the United States, at chambers, in New Orleans, to require additional bonds in those cases, in which writs of error to the supreme court of the United States had been allowed and bonds already given [and the justice declined to take any further action in regard to the securities].

C. Roselius, W. H. Hunt, and J. P. Horner, for the motion.

John A. Campbell, J. B. Cotton, and J. Q. A. Fellows, contra.

BRADLEY, Circuit Justice. In these cases writs of error were allowed, and bonds to prosecute and to answer all damages and costs were taken within ten days from the rendering of the decrees in the state court, to which the writs were directed. The bonds were required in such amounts respectively as then appeared to me sufficient, being the same as required on appeal·from the state district to the state supreme court. Affidavits have since been laid before me, for the

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

purpose of showing that the amount of the bonds is not sufficient as security for the damages which the defendants in error will sustain if the writs are to be deemed a supersedeas of the decrees and executions thereon, and if the decrees should be affirmed.

In the private suits the decrees are not for sums of money, except as to costs; but in the suits of defendants in error, they are for perpetual injunctions against the plaintiffs in error, to restrain them from violating the exclusive right granted to the defendants of having cattle landings, live stock depots and slaughter houses in New Orleans. In the suits of the plaintiffs in error, the decrees are for the dismissal of the petitions, and a dissolution of the injunction obtained by the plaintiffs. If these decrees should severally be affirmed, there would still be no decree against the plaintiffs in error for the payment of any money, other than the costs; but only for the perpetuity of the injunctions of the defendants and the dissolution of the injunctions of the plaintiffs.

But the defendants in error insist that they will, in the mean time, sustain damage by the suspension of their injunctions if they are suspended by the writs of error, and by the continuance of the plaintiffs' injunctions, if they are continued by the writ of error, and that this damage will be largely in excess of the bonds taken on allowing the writs of error. I do not see any evidence that this effect will follow in any case but that of the Live Stock Dealers and Butchers' Association against the Crescent City Live Stock Landing and Slaughter House Company. In this case it does appear that the probable emoluments and fees which will accumulate and become due from the plaintiffs to the defendants in error during the pending of the appeal, will largely exceed the amount of the bond taken. The bond is in the penalty of $10,000, and the fees will probably accumulate in one year to the amount of over $60,000. But have I any right to demand a bond sufficient to guaranty the payment of this accumulation of fees? At first I supposed I had such a right; and I purposed requiring a bond to be given to the amount of $100,000. But on a more careful examination of the cases, particularly of the case of Roberts v. Cooper, 19 How. [60 U. S.] 375. I am satisfied that it would not be competent for me to do so. In that case a plaintiff in ejectment recovered the land and nominal damages. The defendant brought a writ of error and gave a bond of only $1.000, being all that the judge required. An affidavit being presented to the court, showing that by being kept out of possession pending the writ of error, the plaintiff would suffer $25,000 damages, the court refused to order an increase of the bond, holding that the case was not provided for by any legislation of congress.

On further examination, I am not entirely satisfied that I could now order an additional bond, if one were proper to be demanded. The language of several of the cases seems to imply that as soon as the writ of error or appeal is allowed, the jurisdiction of the supreme court attaches to the case, and supersedes the further action of the judge at chambers. In the Rubber Co. v. Goodyear, 6 Wall. [73 U. S.] 156, the court says: "In equity cases, the appellate jurisdiction of this court attaches upon the allowance of the appeal." And again: "The question of sufficiency (of the bond) must be determined in the first instance by the judge who signs the citation, but after the allowance of the appeal, this question, as well as every other in the cause, becomes cognizable here." I am referred to one case, that of Black v. Zacharie, 3 How. [44 U. S.] 493, in which the circuit court of the district of Louisiana annulled their order for a supersedeas on account of the insufficiency of the bond. In the cases before me, I have made no order for a supersedeas, but have left the cases to the legal effect of the several writs of error allowed, having simply approved the several bonds which were tendered in the cases. That approval undoubtedly imports that the bonds are sufficient for a supersedeas of further proceeding under the decrees, so far as a writ of error can legally operate as such, and to that extent it was my intention that they should operate.

The question as to what is the legal effect of writs of error on subsequent proceedings in these cases, it is not necessary for me to decide. The suits are really suits in equity, the relief sought being an injunction, which is purely equitable relief. In England, appeals from decrees in equity do not suspend proceedings in the court below, nor the operation of the orders or decrees appealed from, unless, on special application, an order to that effect be made, either by the court appealed from or the court appealed to. But the reason for this rule seems to be that appeals are allowed there from interlocutory as well as final orders and decrees; and if every appeal had the effect of suspending further proceedings, no case would ever be determined except by consent of parties. The Warden v. Morris, 9 Ves. 316; Huguenin v. Basely, 15 Ves. 184; Waldo v. Caley, 16 Ves. 206. And it seems to be the settled understanding of the courts of the United States, in which and to which appeals are only allowed from final decrees, that an appeal, as well as a writ of error, operates as a supersedeas, if taken within the proper time and with an offer of the requisite security. "The act of 1803," says Mr. Justice McLean, in Stafford v. Union Bank of Louisiana, 16 How. [57 U. S.] 139, "places appeals in chancery on the same footing as writs of error. [2 Stat. 244, § 2.] And in the case of Catlett v. Brodie, 9 Wheat. [22 U. S.] 553, this court held that security must be given on a writ of error to operate as a supersedeas for the amount of the judgment." And again:

"There is no discretion to be exercised by the judge taking the bond when the appeal or writ of error is to operate as a supersedeas. This rule was established in 1817, and has been adhered to ever since." Id. 140. In Rubber Co. v. Goodyear, 6 Wall. [73 U. S.] 156, the court say: "What is necessary, is, that it [the security] be sufficient, and when it is desired to make the appeal a supersedeas, that it be given within ten days of rendering the decree."

But suppose it to be granted that an appeal, properly allowed, is a suspension in equity cases as well as in cases of law; of what is it a supersedeas? Does it supersede the decree? Will a defendant, after appealing from a decree for specific performance requiring him to execute a deed, be amenable to an attachment if he neglects to execute such deed? It would seem to be the logical consequence that the whole effect of the decree is suspended, and that without some special order to the contrary (which it seems can only be made by the appellate court), things must remain in statu quo ante decretum until the appeal is determined.[2] But on this subject parties must take the law at their peril, as I cannot. sitting here, make any judicial determination which will bind them. The result simply is that I must, under the circumstances, decline to take any further action with regard to the securities.

[2] This subject is discussed. and a somewhat different view taken, in "Slaughter House Cases," 10 Wall. [77 U. S.] 273.

